```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
DEVIN ALEXANDER,                                                 :
                                                                 :
                               Petitioner,                       :
                                                                 :      20-cv-1487 (LJL)
            -v-                                                  :
                                                                 :      OPINION AND ORDER
MARK ROYCE, SUPERINDENDENT, GREEN                                :
HAVEN CORRECTIONAL FACILITY, et al.,                             :
                                                                 :
                               Defendants.                       :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Petitioner Devin Alexander ("Petitioner"), proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in New York state court. Petitioner was convicted on December 13, 2013 on charges of Second Degree Murder in violation of N.Y. Penal Law § 125.25[1], Second Degree Attempted Murder in violation of N.Y. Penal Law §§ 110; 125.25[1], and Second Degree Criminal Possession of a Weapon in violation of N.Y. Penal Law § 265.03[1][b]. He was sentenced on January 17, 2014 to a term of incarceration of 50 years to life. Dkt. No. 2 at 1; Dkt. No. 14 at 2. Petitioner claims: (1) that "the trial court erred in denying petitioner's Batson objection without requiring the prosecution to give race-neutral reasons for its peremptory challenges to five Black prospective jurors"; and (2) that petitioner was convicted based on testimony the prosecution knew or should have known to be false, and which they failed to investigate. Dkt. No. 2 at 3-4.

## FACTUAL BACKGROUND

The following facts are taken from the petition and the appended record. Given the Petitioner's state court conviction, the facts are summarized in the light most favorable to the

verdict.  *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (per curium).

Petitioner was convicted in New York Supreme Court on December 13, 2013 of the August 4, 2008 murder of Charles Sims and the attempted murder of Jason Aquino at a Bronx strip club.  Dkt. No. 14 ¶ 7; Dkt. No. 15 at 2-3.  At trial, the State offered eyewitness testimony describing how the attack was planned.  Dkt. No. 15 at 3-5.  The State also offered eyewitness testimony and a video camera recording of the shooting.  *Id*. at 7-9.  Witnesses testified about the subsequent police chase involving the vehicle in which Petitioner arrived at the strip club, as well as about the arrest of Petitioner immediately following this chase.  *Id*. at 10-12.  Medical and ballistics evidence confirmed that Sims died from shots fired from a gun found with Petitioner upon his arrest, and DNA evidence linked Petitioner to this gun.  *Id*. at 14-17.

In September of 2017, Petitioner appealed his conviction to the New York Appellate Division, First Department, on four grounds. Dkt. No. 2 at 2.  Petitioner claimed that (1) the trial court erred in denying Petitioner's *Batson* objection during *voir dire*; (2) the prosecution relied on and failed to investigate the testimony of Pierre Hunt, which they should have known was likely false; (3) the trial court failed to meaningfully consider three notes submitted by the jury; and (4) his sentence of 50 years to life was excessive.  *Id*.

The Appellate Division, First Department unanimously affirmed Petitioner's conviction, ruling that the trial court properly denied Petitioner's *Batson* objection and that Petitioner's allegations regarding Hunt's testimony were based on factual assertions outside the record and were therefore unreviewable on direct appeal.  Dkt. No. 14 at ¶ 9.  Petitioner was denied leave to appeal to the New York Court of Appeals on May 28, 2019.  *Id*. ¶ 10.

Now, Petitioner seeks a writ of habeas corpus from this Court on two of the same grounds raised in Petitioner's appeal at the state level.  He argues that (1) "[t]he trial court erred

2

in denying petitioner's *Batson* objection without requiring the prosecution to give race-neutral reasons for its peremptory challenges to five Black prospective jurors," and that (2) "Petitioner was convicted upon testimony that the prosecution should have known was likely false, and which the prosecution failed to investigate." Dkt. No. 2 at 3.

## PROCEDURAL HISTORY

The judgment of conviction was affirmed by the Appellate Division, First Department on January 31, 2019, and leave to appeal to the New York Court of Appeals was denied on May 28, 2019. Dkt. No. 2 at 2. On February 19, 2020, Petitioner filed the instant petition. *Id.* at 3-4. After several extensions were granted, the government filed its opposition to the Petition on June 15, 2020. Dkt. No. 15.

## LEGAL STANDARD

This Court's review of Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, which provides for a deferential review of a state court's ruling. *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009).

Before a federal court can proceed to the merits of a petitioner's claims, it must determine that the petition complies with the statute's numerous procedural constraints. The first of these requirements is exhaustion. Generally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c). The exhaustion requirement is there to ensure that a state prisoner has given the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal

3

quotation marks omitted).

As to the merits of a petitioner's claims, the AEDPA in relevant part reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[W]hen a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits." *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).  The Supreme Court has "interpreted § 2254(d)(1) as giving independent meanings to the 'contrary to' and 'unreasonable application' clauses." *Overton v. Newton*, 295 F.3d 270, 275 (2d Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).  "A state court decision is 'contrary to' clearly established federal law as determined by the Supreme Court 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Id*. (citing *Williams*, 529 U.S. at 405).  "A state court decision involves an 'unreasonable application' of clearly established federal law as determined by the Supreme Court when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (quoting *Williams*, 529 U.S. at 413).  "[I]t is well-established in this Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief." *Sorto v.*

4

*Herbert*, 497 F.3d 163, 169 (2d Cir. 2007).  Indeed, Section 2254(d)(1) "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."  *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004).  Finally, when a court conducts its review, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'"  *Drake*, 553 F.3d at 239 (quoting 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

### A.   Petitioner's False Testimony and Failure to Investigate Claim is Unexhausted

Petitioner has brought a so-called "mixed" petition for habeas relief.  A mixed petition is one in which a state prisoner presents a federal court "with a single petition containing some claims that have been exhausted in the state courts and some that have not."  *Rhines v. Weber*, 544 U.S. 269, 271 (2005).  Petitioner fully exhausted his *Batson* claim "by raising [that claim] on his direct appeal to the Appellate Division, and then detailing [it] in his request for leave to appeal to the Court Appeals."  *Chu v. Artus*, 2011 WL 8202381, at *13 (S.D.N.Y. Aug. 9, 2011), *report and recommendation adopted*, 2012 WL 2899378 (S.D.N.Y. July 16, 2012).  His false testimony and failure to investigate claim, however, has not yet been exhausted, and is therefore ineligible for habeas review.

The exhaustion requirement is fairly simple.  In essence, it means that a federal court cannot act on a state conviction before the state courts have had an opportunity to do so first.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) ("Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) ("This exhaustion requirement is . . . grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.").

5

Courts in the Second Circuit apply a two-step analysis to determine whether a claim has been properly exhausted in state court:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

*Johnson v. Kirkpatrick*, 2011 WL 3328643, at *11 (S.D.N.Y. Aug. 3, 2011) (quoting *Diaz v. Coombe*, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997)).

Exhaustion does not require state prisoners to pursue "extraordinary remedies," *Boerckel*, 526 U.S. at 844 (citing *Wilwording* v. *Swenson,* 404 U.S. 249, 249-250 (1971)), but it does require that they "fairly" present their claims to the highest state court for review, *id.* at 839-40, 848. A "fair" presentation of claims requires appellate review where such review is available "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Smalls v. Lee*, 2016 WL 5334986, at *5 (S.D.N.Y. Sept. 22, 2016) (quoting *Baldwin*, 541 U.S. at 29); *see also O'Sullivan,* 526 U.S. at 845 ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Under these standards, Petitioner's false testimony claim is unexhausted. "For habeas purposes, any aspect of the claim that was not reviewable on the record . . . should be considered unexhausted." *Berrios v. Chappius*, 2018 U.S. Dist. LEXIS 88421, at *57-58 (S.D.N.Y. May 24, 2018). Such claims have not been "fairly presented" to the state courts as required by AEDPA,

and therefore cannot be reviewed by a federal court on a petition for habeas corpus. On Petitioner's direct appeal, the New York Appellate Division, First Department held that "[Petitioner's] claim that the People presented allegedly false testimony is based on factual assertions outside the record and therefore is unreviewable on direct appeal" because "[t]he record does not support defendant's assertion that law enforcement failed to investigate the truth of a witness's testimony." *People v. Alexander*, 92 N.Y.S.3d 41, 42 (1st Dep't 2019). Petitioner thus has not presented the New York state courts a "fair opportunity to pass upon the claim." *Sookoo v. Heath*, 2011 U.S. Dist. LEXIS 43960, at *17 (S.D.N.Y. Apr. 20, 2011); *see also Read v. Thompson*, 2016 WL 165715, at *12 (S.D.N.Y. Jan. 13, 2016) ("[B]ecause the claim relies at least somewhat on evidence outside of the record . . . the claim arguably could have been raised in a collateral motion pursuant to N.Y. Crim. Proc. Law § 440.10. Thus, Petitioner may still have a remedy available in state court, and the claim cannot be deemed exhausted.").

Petitioner has a forum in which to present his claim under New York state law. A motion pursuant to N.Y. C.P.L. § 440.10 to vacate a judgment may be raised "[a]t any time after the entry of a judgment." N.Y. C.P.L. § 440.10(1). Such a motion would provide New York state courts a meaningful opportunity to review Petitioner's false testimony claim, as it requires consideration of off-the-record evidence that could not be considered by the Appellate Division on direct review. Petitioner's false testimony claim is thus unexhausted.

A court has three options when a state prisoner presents a mixed petition of unexhausted and exhausted claims: dismiss the petition without prejudice; stay the proceedings and hold the petition in abeyance; or deny the petition on the merits under AEDPA. *See, e.g.*, *Reyes v. Phillips*, 2003 WL 42009, at *4 (S.D.N.Y. Jan. 6, 2003) (discussing the three options available to

7

a federal court considering a mixed habeas petition and deciding to dismiss the unexhausted claims while staying the exhausted ones).

A federal court is only permitted to stay proceedings on a mixed petition and hold the petition in abeyance where a petitioner can show "good cause" as to why that claim was not properly filed in state court to begin with and also establish that his unexhausted claims are not "plainly meritless." *Rhines*, 544 U.S. at 277-78; *see Francois v. Warden of Sullivan Corr. Facility*, 2014 WL 1153920, at *4 (E.D.N.Y. Mar. 19, 2014). The Court in *Rhines* reasoned that "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277. Where, as here, a petitioner has not provided any reason explaining why they he failed to pursue an unexhausted claim in state court first, there exists no good cause for a stay. *See, e.g.*, *Kirkpatrick*, 2011 WL 3328643, at *13 ("[Petitioner] has offered no explanation for why his state claims remain unexhausted, and therefore has not shown the requisite good cause to receive a stay and abeyance.").

The Court has the power to dismiss Petitioner's entire petition without prejudice as a mixed petition of exhausted and unexhausted claims, but that course would create the risk that Petitioner will be unable to return to federal court with any of his claims after properly exhausting his false testimony claim due to the AEDPA's one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). "Where a court 'determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.'" *Chu*, 2011 WL 8202381, at *15 (quoting *Rhines*, 544 U.S. at

278); *see also Wesley-Rosa v. Kaplan*, 274 F. Supp. 3d 126, 129 (E.D.N.Y. 2017).

Finally, a federal court may also rule on the merits of an unexhausted § 2254(b) claim if it finds that said claim is "plainly meritless." The Court declines to do so. As the Appellate Division held, the evidence, if any, that would form the basis for Petitioner's unexhausted false testimony claim is not in the trial record and has not been presented to this Court. As described above, Petitioner retains the option of moving to collaterally attack his conviction pursuant to N.Y. C.P. L. § 440.10. Accordingly, the Court declines to reach the merits of such claim. Instead, it will "delete" Petitioner's false testimony claim from his petition, dismissing that claim without prejudice, in order to reach the merits of his remaining *Batson* claim.

### B.  Petitioner's *Batson* Claim May Be Dismissed on the Merits

Unlike his false testimony claim, Petitioner has fully exhausted his *Batson* claim on direct appeal. *See, e.g.*, *Chu*, 2011 WL 8202381, at *13 ("In this case, Petitioner has fully exhausted all of his *Batson* claims, as well as a number of the specific claims he now seeks to assert regarding the constitutional adequacy of his trial counsel, by raising those claims on his direct appeal to the Appellate Division, and then detailing them in his request for leave to appeal to the Court Appeals.").

"Pursuant to § 2254(d), habeas relief may not be granted 'with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court' or was based upon an unreasonable determination of the facts in light of the evidence in the state court record." *Lopez v. Rivera*, 157 F. App'x 358, 359 (2d Cir. 2005) (quoting 28 U.S.C. § 2254(d)). The Supreme Court has held that a peremptory challenge motivated by "purposeful racial discrimination" is a violation of the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476

9

U.S. 79, 86 (1986).  However, "as in any equal protection case, the 'burden is, of course,' on the defendant who alleges discriminatory selection of the venire 'to prove the existence of purposeful discrimination.'"  *Id*. (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)).  As such, the party alleging discrimination bears the initial burden, however slight, of making the initial showing of discrimination.  The Supreme Court's *Batson* analysis consists of three steps:

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.

*Johnson v. California*, 545 U.S. 162, 168, (2005) (internal quotations and citations omitted).

Petitioner here argues both that the trial court rendered a ruling that was contrary to or an unreasonable application of the *Batson* precedent by not proceeding to step two of the *Batson* analysis, and also that the court "[i]n rejecting the defense's *Batson* challenge . . . neglected to consider whether the prosecutor's striking of the five young Black jurors created an inference of discrimination, but instead made the *a priori* judgment that because the prosecutor had not struck all of the Black people on the panels, there was no prima facie case."  Dkt. No. 14-1 at 31.

Petitioner's counsel raised a *Batson* objection in the fifth round of jury selection.  *Id.* at 19.  Upon a request from the trial court judge to articulate the record of this challenge, Petitioner's counsel stated the following: "The record is jurors have been challenged by the People, I believe there's five of them are all African-American and young, and none of them have anything that would indicate any bias or prejudices that would make them not an acceptable juror."  Dkt. No. 26 at 1094.  The court then clarified, and Petitioner's counsel affirmed, that this

10

challenge is "numbers based because [the stricken jurors] are all members of the same racial group." *Id*. at 1095.  The court then denied the *Batson* challenge without moving to the second step and asking the prosecution for a race-neutral explanation.  Dkt. No. 14-1 at 22.

To make out a prima facie case of purposeful discrimination, the defendant must show "a pattern of challenges against minority prospective jurors." *Overton*, 295 F.3d at 276.  In ruling on his *Batson* claim, the Appellate Division found that Petitioner "did not produce numerical or nonnumerical 'evidence sufficient to permit the trial judge to draw an inference that discrimination ha[d] occurred' . . . and thus failed to make a prima facie showing of racial discrimination in the People's exercise of challenges." *Alexander*, 92 N.Y.S.3d at 42 (quoting *Johnson*, 545 U.S. at 170).  Such a conclusion was not "contrary to" Supreme Court precedent under 28 U.SC. § 2254(d)(1), as the state court did not "arrive[] at a conclusion opposite to that reached by [the Supreme Court] on a question of law," nor did the court decide the case "differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

Because this finding was not "contrary to" Supreme Court precedent, the question that remains is whether it was "unreasonable" for the Appellate Division to determine that Petitioner did not make a prima facie showing of purposeful discrimination in the prosecution's use of peremptory challenges.  "As Chief Judge Jacobs explained in *Sorto* [*v. Herbert*, 497 F.3d 163 (2d Cir. 2007)], it is not the role of the habeas court to speculate about circumstances outside the record that hypothetically could have supported a prima facie case." *Butler v. Fischer*, 2008 WL 3338202, at *7 (S.D.N.Y. Aug. 8, 2008), *aff'd*, 345 F. App'x 642 (2d Cir. 2009); *see Sorto,* 497 F.3d at 171 ("When, as here, a *Batson prima facie* case depends on a pattern of strikes, a petitioner cannot establish that the state court unreasonably concluded that the pattern was not

11

sufficiently suspicious unless the petitioner can adduce a record of the baseline factual circumstances attending the *Batson* challenge.").

Petitioner failed to make out a prima facie case of discrimination at trial, and continues to do so here, citing only to a brief colloquy in the record concerning the striking of five potential African American jurors.  To raise a *prima facie* case for a *Batson* objection, a defendant must produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson*, 545 U.S. at 170.  For example, "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." *Batson*, 476 U.S. at 97.  A *prima facie* case can be established by the prosecution's pattern of challenges, *see, e.g.*, *People v. Rosado*, 45 A.D.3d 508, 508 (1st Dep't 2007), and it can even be made "on the peremptory challenge of a single juror that gives rise to an inference of discrimination," *People v. Smocum*, 757 N.Y.S.2d 239, 241 (2003).

Courts recognize two broad categories of discriminatory patterns that might give rise to an inference of discrimination.  Under a "challenge rate" theory, "[d]iscriminatory purpose may be inferred when a party exercises a disproportionate share of its total peremptory strikes against members of a cognizable racial group compared to the percentage of that racial group in the venire." *Jones*, 555 F.3d at 98 (collecting cases).  Under an "exclusion rate" theory, "a party uses peremptory challenges to strike a disproportionate number of members of a cognizable racial group from the venire," and successful *prima facie* challenges "have typically included patterns in which members of the racial group are completely or almost completely excluded from participating on the jury." *Id*. (collecting cases).

For a party to prevail on habeas review of a "challenge rate" theory, "the record should include, at a minimum, the number of peremptory challenges used against the racial group at

issue, the number of peremptory challenges used in total, and the percentage of the venire that belongs to that racial group." *Id.*; *see, e.g.*, *Sorto*, 497 F.3d at 171-72 (discussing how a record lacking crucial information precludes a ruling in favor of a habeas petitioners who advance a challenge rate theory); *Rosario v. Burge*, 542 F. Supp. 2d 328, 341 (S.D.N.Y. 2008) (noting that a high proportion of challenges used against a racial group is insufficient to make a *prima facie* case where the record "does not establish how many members of minorities were included in the initial jury pool, or how many remained on the jury after the use of peremptory challenges"). At minimum, trial counsel must establish that the ratio of stricken jurors of a cognizable group to all stricken jurors differs materially from this same ratio in the venire. "When the record lacks one of those facts, it is impossible for a reviewing court to conclude that the state court should have drawn an inference of discrimination," *Jones* 555 F.3d at 98, since the Court can make no comparison that would permit it to make a determination of proportionality.

Similar evidentiary requirements apply to an "exclusion rate" theory. *See, e.g.*, *id*. at 99 ("When the asserted prima facie case is based upon the use of strikes to exclude all or nearly all of the members of a particular racial group, the record need . . . include how many members of that group were in the venire, and how many of those were struck.") (collecting cases); *Rosario*, 542 F. Supp. 2d at 341-42 ("While the racial makeup of the venire was observable to the Trial Court . . . [the petitioner] failed to establish this information in record for this Court to properly adjudicate the matter on review. Accordingly, this Court cannot find that the trial court was unreasonable in denying [the petitioner's] prima facie *Batson* challenge."). If trial counsel fails to establish how many members of a cognizable group are in the venire, then merely counting the excluded members of that group cannot lead to an inference that those excluded members comprise "all or nearly all" of that group. *Rosario*, 542 F. Supp. 2d at 341.

In light of these minimal evidentiary requirements, Petitioner's *Batson* claim is without merit. When given an opportunity to state for the record the basis for Petitioner's *Batson* challenge, Petitioner's counsel identified only the number of African-American jurors that the prosecution had stricken. Dkt. No. 26 at 1094. He failed to establish the composition of the venire, which is a necessary requirement for either theory by which the Court might infer a pattern of discrimination. And the record for the case at bar—which could conceivably reveal information self-evident to participants in the trial but not to this Court—does not provide the missing evidence. Further review of the trial transcript does reveal that at the time of the *Batson* challenge, the prosecution had already exercised thirteen peremptory challenges, of which five were against African-American jurors. *Id*. at 1098. But nowhere in the record is there evidence suggesting that using five of thirteen strikes against African-American jurors is disproportionate given the composition of the venire, or that the prosecution attempted to "exclude all or nearly all" African-American jurors from the jury. *Jones*, 555 F.3d at 98. Indeed, to the extent the trial transcript is informative on this topic, the record contradicts both theories. *See* Dkt. No. 26 at 1098 (recording the trial judge's comments that "we did have a large percentage of members of the jury panel who are African-American" and that four African-American jurors had already been selected).

Petitioner, "who bore the burden of articulating and developing the factual and legal grounds supporting his *Batson* challenge before the trial court," failed to do so here. *Overton*, 295 F.3d at 279. Therefore, this Court finds that Petitioner has not demonstrated that the state court's denial of his *Batson* claim involved an unreasonable application of federal law, and his petition for a writ of habeas corpus on these grounds is denied.

## CONCLUSION

For the forgoing reasons, the petition is DENIED. The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Petitioner and to close the case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: March 30, 2021
New York, New York

_____
LEWIS J. LIMAN
United States District Judge